## NARRAGANSETT MOTORS, Inc. v. PACKARD MOTOR CAR CO.

### Civ. No. 8902.

United States District Court
D. Massachusetts.

Jan. 30, 1951.

Selwyn A. Kudisch, Morris Michelson, Boston, Mass., for plaintiff.

R. Ammi Cutter, and Palmer, Dodge, Gardner, Bickford & Bradford, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff seeks to recover for the alleged failure on the part of the defendant to live up to its contract to furnish it with Packard automobiles between September of 1946 and June of 1948. The original action was brought as a class action, the allegation being that it was brought "as representative of the class of numerous Packard Motor Car Company dealers who operated as such during the period from January 1947 to March 31, 1948." At the trial the Court made a ruling that this was not the sort of suit to be considered as a class action, and in fact no one had attempted to intervene. The Court further pointed out that if it were a class action and included Packard car dealers who were similarly situated as the plaintiff but who lived in Massachusetts, then the Court would lose jurisdiction as the proper alignment of the parties would place residence in Massachusetts on both sides of the case. Objection was made to this ruling and it will not be discussed further herein.

### Findings of Fact.

About the middle of February 1947, the Packard Motor Car Company decided to do away with its distributorship in Massachusetts which was then controlled by the Packard Motor Car Company of Boston, Inc. During the next six weeks it made arrangements whereby the dealers dealt with it directly through its zone office. They actually entered into a contract with the plaintiff some time during this period, but before doing so advised the plaintiff that its plant and equipment were not up to proper standards and that they would not contract with it until certain improvements were made. These were in fact made, and an agreement dated April 1, 1947, was entered into. This was known as a "Packard Dealer's Sales Agreement", and it provided in substance that the defendant would sell to the plaintiff and the plaintiff would buy from the defendant "such 'Packard Products' as are

specified in purchase orders executed by Dealer and accepted by Seller from time to time." Prior to the execution of this contract, a "Dealer Qualification Report and Check Sheet" was executed. This sheet, on which appears the phrase "Quota 100", is on its face not a contract or part of one, but rather a factual report on the financial status, facilities, and qualifications of plaintiff as a prospective Packard dealer. The language is all informational, not contractual, no reference is made to any agreement, and the signature of the parties thereto can be no more than their verification of the facts stated in the report. By contrast the differently colored paper headed "Packard Dealer's Sales Agreement" is obviously what it purports to be in language and form—a contract signed by the plaintiff and the defendant. It specifically states in the fifth clause of the contract that "This Agreement supersedes and annuls all previous agreements between the parties hereto * * *". It incorporates by reference a phamphlet called "Additional Terms and Conditions" but makes no reference to a Qualification Report. The word "quota" does not appear at all in the Dealer's Agreement or in the pamphlet. The plaintiff relies on the Qualification Report and the statement contained therein, "Quota 100", as being a part of the contract and a promise on the part of the defendant either to supply that quota or such percentage of the quota as would bring him into line with all other dealers in his zone.

From time to time the plaintiff, orally and in writing, was urging the defendant to send him more cars. As would be expected, the defendant from time to time said that he would get plaintiff all the cars that he could. The contract between the two parties was cancelled from August 5 until October 1 under the terms of the contract because of internal dissension within the plaintiff organization, so that the period covered by the contract was actually ten months, running from April 1, 1947, to July 31, 1947, and October 1, 1947, to March 31, 1948. During that period the plaintiff received 29 cars, which was 29% of the quota referred to on the Qualification Sheet. The actual percentage to which he would have been entitled as determined by the ratio of the number of cars shipped to the Boston Zone to the number represented by the total quota of all dealer areas in the Zone, would be 24% plus for the twelve-month period, or 21% for the ten-month period, so that on his own figures he has received his fair percentage of his quota.

The plaintiff asks the Court to consider that four of the cars he got in April and May of 1947 were cars which were owed him by the former distributor, but this the Court rejects. The plaintiff also urges that he is entitled to a proportional share of quotas which were assigned to territories either where there was no dealer or where the dealership had been cancelled. This of course the Court rejects.

Reliance is principally made upon a combination of the Dealer's Agreement, the Qualification Sheet, and statements made by Packard's own manager, a Mr. Jeffrey. No doubt Jeffrey made a good many statements to the effect that he would do all he could do to get more cars for the plaintiff, although the plaintiff testifies through its President that Jeffrey in several conversations about getting more cars would start out by saying, "I can't give you any guarantee of any kind." Though Jeffrey went on to say that the plaintiff would get his share of cars and made statements to the general effect that he would be "taken care of", these assurances preceded by a clear caution of no guarantee would not mean a firm commitment to a reasonable business man in the automobile trade at that time and under those circumstances.

This is not a case where fine print and nice language in a contract may prove a trap for the unwary. The terms of the contract clearly negate any guarantee of quota. The evidence is not convincing that Jeffrey, even if he had the authority, which has not been shown, ever told the plaintiff that it would get anything more than its share of the cars shipped into this district. This I find it did receive.

### Conclusions of Law.

From the foregoing I conclude and rule that there has been no breach of contract by the defendant and the plaintiff cannot recover.

The action is to be dismissed.